1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

OMAR HERNANDEZ,                          )
                                         )
                    Plaintiff,           )
                                         )          2:13-cv-00698-RCJ-VCF
          vs.                            )
                                         )
GREG COX et al.,                         )          **ORDER**
                                         )
                    Defendants.          )
_____  )

Plaintiff Omar Hernandez, a prisoner in the custody of the Nevada Department of Corrections, has lodged a Complaint pursuant to 42 U.S.C. § 1983, attached to his Application to Proceed *in Forma Pauperis*. The Court grants the Application and dismisses the Complaint pursuant to 28 U.S.C. § 1915A, with leave to amend.

**I.      LEGAL STANDARDS**

**A.      Screening**

A federal court must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity, officer, or employee. *See* 28 U.S.C. § 1915A(a). In its review, a court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See id.* § 1915A(b)(1)–(2). Dismissal of a complaint for failure to state a

1   claim upon which relief can be granted is provided for by Federal Rule of Civil Procedure 12(b)(6),

2   and the court applies the same standard under § 1915A.  When a court dismisses a complaint for

3   failure to state a claim, the plaintiff should be given leave to amend the complaint with directions as

4   to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could

5   not be cured by amendment. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

6          A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. *See N. Star Int'l v.*

7   *Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  When considering a motion to dismiss

8   under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint

9   does not give the defendant fair notice of a legally cognizable claim and the grounds upon which it

10  rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In considering whether a complaint

11  is sufficient to state a claim, a court takes all material allegations as true and construe them in the

12  light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir.

13  1986).  A court, however, is not required to accept as true unwarranted deductions of fact or

14  unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

15  A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff

16  must plead facts pertaining to his own case making a violation plausible, not just possible. *Ashcroft*

17  *v. Iqbal*, 556 U.S. 662, 677–79 (2009) (citing *Twombly*, 550 U.S. at 556) ("A claim has facial

18  plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

19  inference that the defendant is liable for the misconduct alleged.").  In other words, under the modern

20  interpretation of Rule 8(a), a plaintiff must not only specify a cognizable legal theory (*Conley*

21  review), he must also plead the facts of his own case so that the court can determine whether he has

22  any basis for relief under the legal theory he has specified, assuming the facts are as he alleges

23  (*Twombly-Iqbal* review).

24         "Generally, a district court may not consider any material beyond the pleadings in ruling on a

25  Rule 12(b)(6) motion.  However, material which is properly submitted as part of the complaint may

26  be considered." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir.

1990) (citation omitted).  Similarly, "documents whose contents are alleged in a complaint and

whose authenticity no party questions, but which are not physically attached to the pleading, may be

considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss

into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994).  Under

Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v.*

*S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986).

Finally, all or part of a complaint filed by a prisoner may be dismissed *sua sponte* if the

prisoner's claims lack an arguable basis in law or in fact.  This includes claims based on legal

conclusions that are untenable, e.g., claims against defendants who are immune from suit or claims

of infringement of a legal interest which clearly does not exist, as well as claims based on fanciful

factual allegations, e.g., fantastic or delusional scenarios. *See Neitzke v. Williams*, 490 U.S. 319,

327–28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

**B.      Exhaustion**

"The Prison Litigation Reform Act requires that a prisoner exhaust available administrative

remedies before bringing a federal action concerning prison conditions." *Griffin v. Arpaio*, 557 F.3d

1117, 1119 (9th Cir. 2009) (citing 42 U.S.C. § 1997e(a)).  A prison system's own requirements

"define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007).  The Nevada

Department of Corrections utilizes a three-stage grievance procedure: an informal grievance, a first

level grievance, and a second level grievance. *See* NDOC Admin. Reg. 740 (Inmate Grievance

Procedure), *available at* http://www.doc.nv.gov/sites/doc/files/pdf/AR740.pdf.

Although once within the discretion of the district court, the exhaustion of administrative

remedies is now mandatory. *Booth v. Churner*, 532 U.S. 731, 741 (2001).  Those remedies "need not

meet federal standards, nor must they be 'plain, speedy, and effective.'" *Porter v. Nussle*, 534 U.S.

516, 524 (2002) (citing *Booth*, 532 U.S. at 739–40 n.5).  Even when the prisoner seeks remedies not

available in administrative proceedings, notably money damages, exhaustion is still required prior to

filing suit. *Booth*, 532 U.S. at 741.  The Supreme Court has strictly construed section 1997e(a). *Id.* at

1    741 n.6 ("We will not read futility or other exceptions into statutory exhaustion requirements where

2    Congress has provided otherwise.").

3         The failure to exhaust administrative remedies as required by § 1997e(a) is an affirmative

4    defense that a defendant bears the burden of proving. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Wyatt*

5    *v. Terhune*, 315 F.3d 1108, 1117 n.9 (9th Cir. 2003), *cert. denied*, 540 U.S. 810 (2003). However, if

6    the affirmative defense of non-exhaustion appears on the face of the complaint, a defendant need not

7    provide evidence showing non-exhaustion. *See Jones*, 549 U.S. at 215. Failure to exhaust is treated

8    as a matter in abatement, not going to the merits of the claim, and is properly raised in an

9    unenumerated Rule 12(b) motion. *Wyatt*, 315 F.3d at 1119. A court may look beyond the pleadings

10    and decide disputed issues of fact without converting the motion into one for summary judgment. *Id.*

11    "[I]f the district court concludes that the prisoner has not exhausted nonjudicial remedies, the proper

12    remedy is dismissal of the claim without prejudice." *Id.* at 1119–20.

13         For the purposes of screening, the Court will assume all claims have been exhausted. The

14    Court will not more closely examine the issue unless some claims survive screening and Defendants

15    file motions alleging non-exhaustion of the surviving claims.

16    **II.    ANALYSIS**

17         Plaintiff, a prisoner at High Desert State Prison, has alleged violations of his constitutional

18    rights while incarcerated at Southern Desert Correctional Center. He alleges that in July 2011,

19    Warden Williams placed Plaintiff in segregation due to suspicions that he was encouraging a "food

20    strike" among inmates. He was released the next day, and a food strike did occur, though Plaintiff

21    himself did not refuse to eat. He and two other inmates were returned to segregation, and he

22    received a notice of charges for a major violation. Senior Correctional Officer Walden denied

23    Plaintiff's two requested witnesses for his disciplinary hearing. Sergeant Ron Jaeger conducted the

24    disciplinary hearing four hours after Plaintiff received the notice of charges, and he also denied

25    Plaintiff any witnesses. Investigator Harris apparently submitted a report for the hearing that

26    indicated Plaintiff's guilt based upon "information received," but the hearing record does not state

what that information was.  Plaintiff was found guilty and sentenced to 168 days of disciplinary segregation and a disciplinary transfer.  Assistant Warden Burson denied Plaintiff's grievances about the disciplinary proceedings.  Although listed as three separate counts, Plaintiff in substance alleges a single violation of his Fourteenth Amendment due process rights.

To state a claim under § 1983, a plaintiff must allege: (1) that a right secured by the Constitution or laws of the United States was violated; and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988). "Prisoners may . . . claim the protections of the Due Process Clause [and] may not be deprived of life, liberty, or property without due process of law." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Still, because prisoners have already been convicted, "the full panoply of rights due a defendant in [criminal] proceedings does not apply.  [Rather], there must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application." *Id.* (citations omitted).  When a prisoner faces disciplinary charges, prison officials must provide the prisoner with: (1) a written statement at least twenty-four hours before the disciplinary hearing that includes the charges, a description of the evidence against the prisoner, and an explanation for the disciplinary action taken; (2) an opportunity to present documentary evidence and call witnesses, unless calling witnesses would interfere with institutional security; and (3) legal assistance where the charges are complex or the inmate is illiterate. *See id.* at 563–70.

However, no *Wolff*-type due process protections apply unless the result of the hearing is a punishment that impairs a constitutionally cognizable liberty interest as defined in *Sandin v. Connor*, 515 U.S. 472 (1995).  Under *Sandin*, segregation within prison does not in and of itself constitute a deprivation of a constitutionally cognizable liberty interest. *E.g.*, *Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1997); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995).  Although *Sandin* concerned administrative segregation, it applies with equal force to disciplinary segregation, because the State's motivation is not relevant to the antecedent inquiry: whether the result of the segregation deprives the prisoner of a constitutionally cognizable liberty interest.  If the answer to that antecedent

1   question is "no," then no procedures at all are constitutionally "due," and a due process claim

2   necessarily fails.  Just as a prison cannot avoid the strictures of the Due Process Clause simply by

3   labeling segregation as "protective" or "administrative," a prisoner cannot invoke the Clause simply

4   by characterizing segregation as "disciplinary" or "punitive."  No matter how a prisoner's

5   segregation (or other deprivation) is labeled by the prison or characterized by the prisoner, a court

6   must examine the substance of the alleged deprivation and determine whether it constitutes an

7   "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life"

8   before it determines whether *Wolff*-type procedural protections apply. *Sandin*, 515 U.S. at 484.

9         Showing that a deprivation is "atypical" with respect to the hardships of ordinary prison life

10  is difficult, because prison conditions are typically harsh.  Prisoners are by definition segregated

11  from the public at large, and they are typically segregated even from other prisoners for the vast

12  majority of any given day, except for perhaps one other cell mate.  Indeed, the Court of Appeals has

13  noted that "it would be difficult (we do not say impossible) to make disciplinary segregation

14  sufficiently more restrictive than the conditions of the general population . . . to count as an atypical

15  and significant deprivation of liberty[.]" *Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003)

16  (Aldisert, J.) (quoting *Wagner v. Hanks*, 128 F.3d 1173, 1174 (7th Cir. 1997)) (alterations in

17  original).  A court in this Circuit looks at three factors under *Sandin*: "(1) whether the conditions of

18  confinement mirrored those conditions imposed upon inmates in analogous discretionary

19  confinement settings, namely administrative segregation and protective custody[;] (2) the duration

20  and intensity of the conditions of confinement; and (3) whether the change in confinement would

21  inevitably affect the duration of [the prisoner's] sentence." *See Chappell v. Mandeville*, 706 F.3d

22  1052, 1064–65 (9th Cir. 2013) (second alteration in original; internal quotation marks omitted).  In

23  other words, if the conditions in segregation are worse that those a prisoner will typically encounter

24  in prison, the Court must still consider whether the conditions are extreme enough in nature and

25  duration or whether they will necessarily affect the length of a prisoner's sentence.  Segregation may

26  lead to a cognizable deprivation of liberty, for example, if the conditions of segregation, although not

in themselves harsh enough to implicate a cognizable liberty interest, result in the deprivation of some other interest particular to the aggrieved prisoner. *See Serrano*, 345 F.3d at 1074, 1078–79 (finding that segregation of a partially paralyzed plaintiff for almost three months to an area where he could not use the wheelchair he was permitted in the general population, such that he could not shower and had difficulty using the bathroom and the bed, implicated a cognizable liberty interest).

Plaintiff here alleges only the pure fact of segregation and its duration, not the conditions of segregation or that it necessarily increased the length of his sentence.  The Court therefore dismisses the due process claim, with leave to amend.  In order to invoke *Wolff*-type due process protections, Plaintiff must allege facts indicating that the conditions he experienced in disciplinary segregation were atypically harsh with respect to conditions in the general population and conditions the State has discretion to impose, such as in administrative segregation or protective custody, or that his segregation necessarily increased the length of his sentence.

///
///
///
///
///
///
///
///
///
///
///
///
///
///

7

**CONCLUSION**

IT IS HEREBY ORDERED that the Application to Proceed in Forma Pauperis (ECF No. 1) is GRANTED.

IT IS FURTHER ORDERED that the Clerk shall FILE the Complaint (ECF No. 1-1).

IT IS FURTHER ORDERED that the Complaint is DISMISSED, with leave to amend.

IT IS FURTHER ORDERED that Plaintiff shall have thirty (30) days from the date this Order is entered into the electronic docket to file an amended complaint. The amended complaint must be a complete document in and of itself and will supersede the original Complaint in its entirety. No allegations, parties, or requests for relief that are not presented in the amended complaint will be considered.

IT IS FURTHER ORDERED that Plaintiff shall place the words "FIRST AMENDED" immediately above "Civil Rights Complaint Pursuant to 42 U.S.C. § 1983" on page 1 in the caption, and Plaintiff shall place the case number "2:13-CV-00698-RCJ-VCF" above the words "FIRST AMENDED"in the space for "Case No."

IT IS FURTHER ORDERED that the Clerk shall send Plaintiff a blank section 1983 civil rights complaint form with instructions, along with one copy of the original Complaint.

IT IS SO ORDERED.

Dated this 6th day of September, 2013.

_____
ROBERT C. JONES
United States District Judge

8